GRAND JUNCTION RAILROAD AND DEPOT COMPANY & another *vs.* COUNTY COMMISSIONERS OF MIDDLESEX.

County commissioners have power to allow an amendment of a petition for the assessment of damages by the construction of a railroad, after hearing the parties, and before issuing a warrant for a jury.

In a petition and warrant for the assessment of damages, occasioned by the crossing of one railroad by another, the place injured is sufficiently described as a "part of the land and bridge heretofore held and occupied by the petitioners for railroad purposes, measuring about five rods in length and forty feet in width, and lying a little west of the draw in their bridge from Charlestown to Somerville, and nearly contiguous thereto," with a reference to the filed location and actual construction of their road.

Two railroad corporations authorized by statute jointly or severally to locate, construct and maintain a railroad, if they file a joint location, are jointly liable for damages.

A location filed by a railroad corporation with the county commissioners, by which alone

the true location upon the ground cannot be fixed and ascertained, is nevertheless suffi-
cient, if by a plan which is made part thereof, and filed therewith, the location can be
determined.

A railroad corporation is entitled to damages for the construction of another railroad across
its track, although such track is laid upon piles over tidewater.

PETITION by the Grand Junction Railroad and Depot Com-
pany and the Eastern Railroad Company for a writ of *certiorari*
to stay proceedings upon a petition filed by the Fitchburg Rail-
road Company before the county commissioners for the county
of Middlesex for the assessment of damages by the location
and construction of a railroad across the railroad of the Fitch-
burg Railroad Company.

The original petition of the Fitchburg Railroad Company to
the county commissioners stated that the other two corporations,
" acting under and by virtue of their charters and acts in addi-
tion thereto, have within three years last past located and con-
structed a railroad in Charlestown in said Middlesex, across
and over the land, location and railroad of these applicants,
and have taken and appropriated to their own use, in common
with these applicants, a part of the land and bridge heretofore
held and occupied by them for railroad purposes, measuring five
rods in length, and about forty feet in width, and lying a little
west of the draw in their railroad bridge, from Charlestown to
Somerville ; and in constructing such new railroad have laid
the same at grade across the tracks of the railroad of these ap-
plicants, thereby greatly altering for the worse and injuring the
same, and subjecting the same to constantly recurring injuries,
retarding and subjecting to injury the equipage of these appli-
cants, and exposing them to great risk of collision, and liability
to damage.    And thereby these applicants have sustained great
damages in conformity to the statute, in such case made and
provided, they now apply to you to estimate and determine the
amount of damages thus by them sustained."

Said petition, against the respondents' objection, after an
order of notice to the respondents and a partial hearing, was
allowed by the county commissioners to be amended, by adding
at the end of the description of the land taken, " and nearly
contiguous thereto."

The county commissioners, after a hearing on said petition and amended petition, decided that the Fitchburg Railroad Company had not suffered any damages which they were by law entitled to recover under said proceedings. The Fitchburg Railroad Company thereupon filed another petition describing the land taken as in the original petition, and stating the substance of the original and amended petitions, and referring thereto, and praying the county commissioners " to issue a warrant in due form of law for a jury to assess the damage by them sustained by the acts and doings of said Eastern Railroad Company and Grand Junction Railroad Company." On this last petition, after notice to the respondents and against their objections, the county commissioners issued a warrant for a jury " to consider and estimate the damages done to the petitioners named in said petition, by the location and construction of a railroad at grade over and across the tracks of the railroad of the said petitioners as aforesaid," and appointed Seth Ames, Esq. to preside at the hearing before the jury.

The petition for a writ of *certiorari* alleged that " said jury has been summoned and is about to proceed to the hearing and assessment of said supposed damage ; " and assigned the following causes for staying proceedings : " Because said warrant does not set forth any cause of damage for which said jury is entitled to assess damages; and because it is not a case over which said county commissioners have or had any jurisdiction, nor had they any power to issue said warrant for a jury ; and because said Ames has no authority to proceed in said hearing; and because neither said warrant nor said petition gives any sufficient description of the premises, as required by law; nor does said warrant set forth any such specification of damages sustained, as authorizes said jury to proceed in the assessment of damages therein."

Upon this petition an order of notice was issued, and answers were filed by the Fitchburg Railroad Company, the county commissioners, and Mr. Ames, and the case referred to a master in chancery to ascertain and report the facts.

The master made a report, reciting the proceedings before the

county commissioners; and that the sheriff, according to the precept of the warrant, had summoned and empanelled a jury, who were about to proceed to a hearing when this application for a *certiorari* was filed; and that Mr. Ames, after consulting the chief justice of this court, at his suggestion dismissed the jury. The other material parts of the report were as follows:

" The Fitchburg Railroad Company was established by the *St.* of 1842, *c.* 84; and in 1846, pursuant to their charter, purchased and took a conveyance of the franchise granted to the Charlestown Branch Railroad Company by the *St.* of 1836, *c.* 187, which transfer was confirmed by the legislature by the *St.* of 1846, *c.* 21, and have since used the railroad of the Charlestown Branch Railroad Company as a part of their road, and have laid down a second track thereon.

" Both the Charlestown Branch and the Fitchburg Railroad Companies were regularly organized, and accepted their charters, and in due season filed locations of their several roads. The Charlestown Branch Railroad Company had constructed and used a railroad from Swett's wharf in Charlestown to lands of the McLean Asylum, and thence to the one mile post on the Boston and Lowell Railroad, which road was claimed and alleged by the Fitchburg Railroad Company to have been built within and according to the location filed by said Charlestown Branch Railroad Company. On examination of the final written location of the Charlestown Branch Railroad, and the one on which the corporation relied as their true and binding location, I am satisfied that by the written description alone of that part of said location which the Eastern and Grand Junction Railroad crosses, it would be impossible to fix and ascertain the true and real location upon the ground; but said written location refers to a plan filed with and made a part of a previous location which had been filed by said company, said plan also being made a part of said final location, and I am satisfied that, by means of said plan, and by referring to the same, said railway, at the point where it was crossed by the Eastern Railroad Company's track, was built within the location; and that the actual construction of the road at the same point corresponded with said

location. A copy of said location is annexed.* It also appeared by the testimony of one of the directors of said Charlestown Branch Railroad Company, at the time said location was filed, and under whose direction and superintendence the same was drafted and filed and the road constructed, that said railway was actually and in fact built within the location as filed.

"The point where the Eastern and Grand Junction Railroad Companies' tracks cross said tracks of the Fitchburg Railroad Company is upon that portion of the last mentioned company's road, transferred to them by said Charlestown Branch Railroad Company, and where the said road is located and constructed over flats, which, at the place of the crossing, and also between the drawbridges on said Fitchburg and Eastern and Grand Junction Railroads, are left bare frequently at low water; said

---

* The material part of said location is thus: "The location of another part of said railroad commences at a point on the northwesterly side of Prison Point Bridge, distant forty two and a half feet from the solid wharf belonging to the Commonwealth, near the State Prison. The line is straight from the point over the bay and flats, a distance of 3360 feet, in direction of land of the McLean Asylum, to a point 360 feet from the northwest corner of the shop near the Hospital wharf, passing over the flats of the Commonwealth, the estates of the heirs of Joy, and of the McLean Asylum. This last line is succeeded by a curve of $582\frac{81}{100}$ feet radius, and $439\frac{88}{100}$ feet in length, passing over the estates of the McLean Asylum, the Charlestown Branch Railroad Company, and of Amasa Woodworth, to a point in the Boston and Lowell Railroad about 260 feet northerly from the one mile post of said Boston and Lowell Railroad. The land and flats last above taken for said railroad is forty feet in width running westerly across the bay to the land of the McLean Asylum, and thence is sixty feet in width to the westerly termination of said railroad. The line last above described is the centre of the track proposed to be first laid, and the space taken for said railroad between the westerly side of Prison Point Bridge and the land of McLean Asylum measures fifteen feet between the northerly side of said space and said centre line, and twenty five feet between the southerly side of said space and said centre line. The space taken between the easterly boundary of said asylum and the westerly termination of said railroad measures twenty five feet between the northerly side of said space and said centre line, and thirty five feet between the southerly side of said space and said centre line. The said location is also shown on the plan submitted with the location of a part of said railroad, filed on the 19th of April 1837."

crossing being within a short distance of and adjacent to the drawbridge on the Fitchburg Railroad. The situation of said crossing and its distance from the shore and highwater mark are to be determined from an examination of the plan in the case of *Walker* v. *Boston & Maine Railroad*, 3 Cush. 9. The drawbridge on the Fitchburg Railroad is laid down on said plan, it being within a short distance from the place of crossing of the Eastern and Grand Junction Companies, which distance can be determined by the other plans of the crossing hereafter referred to and made a part of this report. No title was claimed for the Fitchburg Railroad Company to the place where the crossing was made by the Eastern and Grand Junction Railroad Companies, except by virtue of the location and construction of the Charlestown Branch Railroad Company and the subsequent transfer of the same to said Fitchburg Railroad Company. The said location of the Charlestown Branch Railroad at said point of crossing by the Eastern and Grand Junction Railroads, and for some distance each side thereof, was and now remains forty feet wide, and there have been two tracks laid down over it.

" The Eastern and the Grand Junction Railroad Companies were authorized by an act of the legislature, [ *St.* 1852, *c.* 306,] to locate and construct an extension of their railways over and across the said Fitchburg Railroad; and in pursuance thereof, did, within two years and two months previous to the filing of the first of said petitions by the Fitchburg Railroad Company, locate and construct a double track across the location and tracks of the Fitchburg Railroad Company, upon that portion thereof transferred to them as aforesaid by the Charlestown Branch Railroad Company, and near the drawbridge in the bridge of said Fitchburg Railroad Company. The location of said Eastern and Grand Junction Railroad Companies extended over five thousand two hundred and twenty four square feet of the location of the Fitchburg Railroad Company, and about one third of that area was actually occupied by the tracks and bridge of said two railroad companies. At the point of the crossing of the Fitchburg Railroad by the Eastern and Grand Junction

Railroads, and for some distance each side thereof, both the roads were built on wooden pile bridges; and in constructing the Eastern Railroad and Grand Junction Railroad, piles were driven separately from the piles of the Fitchburg Railroad, and the tracks of said two first mentioned companies were laid on and supported by said piles, and not in any way on any part of the structure of the Fitchburg Railroad Company. At the crossing, those means are taken to effect the same, which are commonly and frequently used, though not universally, each of the four rails being cut completely through in four places. The Eastern Railroad Company have furnished and kept in repair the frogs at said crossing and the rails connected therewith, up to the time of the hearing before me.

"The said crossing is injurious to the Fitchburg Railroad Company in the following respects, and they suffer from it an unappreciable amount of damage : Their locomotives and cars are injured to some extent by it, more than they would be by passing over a continuous track; there is some more danger of accidents than there otherwise would be; they are obliged to stop every train of cars before passing the crossing, and the stopping of a train causes some injury to the cars and locomotives, and an increase of expense for fuel for the engine. What amount of damage was suffered from these various sources was not in evidence before me, only that it was real and appreciable. Cars of other railroads connecting with the Fitchburg Railroad Company are also obliged to pass the crossing, and receive of course the same injury as the cars of the Fitchburg Railroad Company. It is also more expensive to keep in repair the track at the crossing than it would be if no crossing existed; but this additional expense of maintaining the structure at the crossing up to this time has been borne exclusively by the Eastern Railroad Company. The trains on the Fitchburg Railroad are occasionally detained more than formerly by vessels passing their drawbridge, owing to the fact that the space between the drawbridges of the two roads is so small that large vessels cannot lie in it; so that the draw on the Fitchburg Railroad is obliged to be kept open until the draw on the Eastern Railroad is opened." .

This case was argued at Boston in February 1859.

*B. R. Curtis & G. M. Browne*, for the petitioners. 1. The amendment to the original petition should not have been allowed. *Perry* v. *Sherborn*, 11 Cush. 388. It is the petition legally served which makes the county commissioners a court and gives them jurisdiction; but here one petition was served and all the proceedings based on another.

2. The warrant is defective, because it does not describe the place taken or injured or the title or interest of the party affected with sufficient certainty; whether it be a fee simple or only an easement, a corporeal or incorporeal hereditament. Rev. Sts. *c.* 39, § 69. *Walker* v. *Boston & Maine Railroad*, 3 Cush. 2, *Perry* v. *Sherborn*, 11 Cush. 388.

3. The Eastern Railroad and the Grand Junction Railroad and Depot Company are improperly joined in the original petition. Though the location was in form joint, those corporations are not copartners, nor jointly interested. If the Fitchburg Company have received any injury, it has been, not from the location, (as would have appeared if they had described their interest properly in the *locus in quo*,) but from the making and maintaining of the Eastern Railroad; and this has been done wholly by the Eastern Company. The nature of the Fitchburg Company's interest is such, being a mere easement, that the location, the description of their route by the Eastern Company, on paper, could do the Fitchburg Company no injury. It was no "taking" of the land.

4. The location of the Charlestown Branch Railroad does not define the "courses, distances and boundaries," as required by the Rev. Sts. *c.* 39, § 75. The master finds that from the written description " it would be impossible to fix and ascertain the true and real location upon the ground." And this defect is not aided by the plan. See *Northern Railroad* v. *Concord & Claremont Railroad*, 7 Foster, 196, 197; *Hazen* v. *Boston & Maine Railroad*, 2 Gray, 574.

5. The injury complained of is not such as is cognizable by the county commissioners. It does not come within the scope and purpose of the Rev. Sts. *c.* 39. It is *dammum absque injuria*

Railroads are so far of a public nature that the legislature have the right, under the general power of eminent domain, to regu-late and control the use of them.   These charters were granted and accepted with full knowledge of this power.   The legisla ture have moreover expressly reserved to themselves entire contro over them.   Rev. Sts. *c.* 44, § 23.   In the charter of the Fitch burg Railroad Company there is also a special reservation of power to authorize another railroad to use any part of their rail road, paying such toll or compensation as the legislature may prescribe.   *St.* 1842, *c.* 84, § 4.   And this reservation applies to the part which was formerly the Charlestown Branch, after it was purchased by and incorporated into the Fitchburg Com-pany, as well as to any other part of their railroad. '

The grant to these petitioners of a right of way across the place where the Fitchburg Railroad was built, and the construc-tion of their road in pursuance of such grant, did not deprive the Fitchburg Corporation of anything previously granted to the Charlestown Branch Railroad Company.

The grant to the Charlestown Branch Railroad Company is to be construed strictly, and any doubt is to operate against the grantees.   *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420. *Perrine* v. *Chesapeake & Delaware Canal*, 9 How. 172.   *Rich-mond, Fredericksburg & Potomac Railroad* v. *Louisa Railroad*, 13 How. 71.   *Providence Bank* v. *Billings*, 4 Pet. 514.   That grant was not of a right of way, absolutely unrestricted, and free from all impediments, but subject to such reasonable im-pediments and restrictions as are usually incident to such ways, in this commonwealth, for the public benefit.   *Atkins* v. *Bord-man*, 2 Met. 467.   *Perley* v. *Chandler*, 6 Mass. 453.   *Wynkoop* v. *Burger*, 12 Johns. 222.   *Jackson* v. *Allen*, 3 Cow. 220.   Im-pediments consequent on one railroad crossing another are, under all the circumstances of this grant, reasonable, and are usually incident to such ways.

But if the grant to the petitioners was of anything previously granted, nothing was taken by an exercise of the right of emi-nent domain ; but the right of way of the Fitchburg Railroad was qualified, by force of the power reserved to the legislature

562 MIDDLESEX.

Grand Junction Railroad and Depot Co. & another *v.* County Commissioners of Middlesex.

to alter, amend or repeal the first grant. *Roxbury* v. *Boston & Providence Railroad*, 6 Cush. 424. Nothing was taken from the Fitchburg Railroad Corporation, and consequently the right of eminent domain was not exercised. *Case of Philadelphia & Trenton Railroad*, 6 Whart. 44, 46. *Davidson* v. *Boston & Maine Railroad*, 3 Cush. 106. It was not the intention of the legislature that the burden of a crossing, which the public interest required to be made, should be borne wholly by one railroad, simply because the other was first built. But it was intended that each should be allowed a right of way, each bearing its own burden, and not that of the other.

The Resolve of 1849, *c.* 94, for the appointment of a commission to devise plans for altering the location of railroads near Boston, so as to avoid crossings and so promote the public safety, shows the intent of the legislature to retain control of this matter. And see opinion of Gibson, C. J. in 6 Whart. 44.

6. The place in question was flats, over which the tide ebbed and flowed, cut off from the upland by creeks and channels, held by the Commonwealth in trust for the people, for the purposes of navigation and the fisheries, and other public uses. The legislature, for the promotion of commerce, granted to the Fitchburg Railroad Company the right to pass over this navigable domain on piles, leaving it still, as it was before, a public highway for boats and vessels. *St.* 1836, *c.* 187, § 2. *Commonwealth* v. *Charlestown*, 1 Pick. 186. *Charlestown* v. *County Commissioners*, 3 Met. 202. The legislature afterwards granted to these petitioners a similar right to pass over this highway on piles.

The legislature, in the exercise of its right to regulate the use of this navigable stream, might have taken away the easement of the Fitchburg Railroad altogether, and without compensation. " It is incident to the power of a legislature to regulate a navigable stream so as best to promote the public convenience," and any injury resulting to individuals thereby, is *damnum absque injuria. Fitchburg Railroad* v. *Boston & Maine Railroad*, 3 Cush. 88. *Davidson* v. *Boston & Maine Railroad*, 3 Cush. 106. *Walker* v. *Boston & Maine Railroad*, 3 Cush. 21. *Zimmerman* v. *Union Canal*, 1 W. & S. 346. *Shrunk* v. *Schuylkill Navigation*

*Co.* 14 S. & R. 71. *Susquehanna Canal* v. *Wright,* 9 W. & S. 9. *Monongahela Navigation Co.* v. *Coons,* 6 W. & S. 101. *Cogswell* v. *Essex Mill,* 6 Pick. 94. *Millbury* v. *Blackstone Canal,* 8 Pick. 473. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad,* 10 Cush. 388, 391. *Gould* v. *Hudson River Railroad,* 12 Barb. 616. *Newburyport Turnpike* v. *Eastern Railroad,* 23 Pick. 326. *Spring* v. *Russell,* 7 Greenl. 273. *Blood* v. *Nashua & Lowell Railroad,* 2 Gray, 140. Redfield on Railways, § 231, art. 6.

7. If the Fitchburg Railroad is not a public highway — as strictly it is not — then it is a private way, and the claim for damages, if any ever existed, is barred by the statute which limits such claim to one year. Rev. Sts. *c.* 39, § 71.

8. The Fitchburg Company have shown no injury for which damages can be assessed under the statute. The land is not taken. There is merely a joint use, an easement in common over navigable water, authorized by the legislature. The only direct damage done was by cutting through the rails, the expense of which was borne by these petitioners. The injury which the Fitchburg Company suffers in its cars, engines, &c., is the same, in kind, that is suffered by several other railroad corporations whose cars run over this bridge, and such damage cannot be recovered. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad,* 10 Cush. 390, 391.

The fact that there is no precedent for such a claim, although similar crossings are very common, not only raises a strong presumption against it, but proves that such crossings are reasonable qualifications of the right first granted. *Lumley* v. *Gye,* 2 El. & Bl. 251.

If a railroad crosses a turnpike at grade, can a traveller, whose carriage is liable to be jolted by the rails, recover damages under the statute? The Fitchburg Company, in the use of their road, are merely common carriers. They may run many or few carriages, or cease to run carriages altogether. How can the jury estimate prospective damages to their carriages or running machinery; or increased liability to accidents?

*E. H. Derby,* for the respondents.

BY THE COURT.* 1. We have no doubt of the power of the county commissioners to allow an amendment of a petition pending before them, after hearing the parties and before issuing a warrant for a jury. A petition of this character is in the nature of a civil action, and the commissioners, in exercising jurisdiction over it, wield judicial power, and are within the spirit, if not the letter, of the Rev. Sts. *c.* 100, §§ 21, 22, which authorize courts to allow amendments either in form or substance of any process, pleading or proceeding. See *Andover* v. *County Commissioners,* 5 Gray, 396; *Ellis* v. *County Commissioners,* 2 Gray, 374.

2. The description in the petition and warrant was sufficiently definite and particular. It gave the length and the width of the land taken, and described it as " lying a little west of the draw in their railroad bridge from Charlestown to Somerville, and nearly contiguous thereto," and referred for greater certainty to the actual location and construction of the Grand Junction Railroad over it, which was within the knowledge of these petitioners.

It is not necessary that the petitioners should set forth their title exactly; the damages will be assessed according to the title proved at the hearing.

3. The two railroad corporations were authorized by the *St.* of 1852, *c.* 306, jointly or severally to locate, construct and maintain this railroad. They did in fact act jointly in taking the property of the Fitchburg Railroad Company, and were therefore jointly liable to the petitioners for the damages sustained by their joint act.

4. A definite reference to a plan in a written description is part of the description, and may be referred to, to explain and make certain the terms of the description. *Hazen* v. *Boston & Maine Railroad,* 2 Gray, 579. *Andover* v. *County Commissioners,* 5 Gray, 396. And the master finds that, with the aid of the plan, the location on the ground may be ascertained and defined. This is a compliance with the Rev. Sts. *c.* 39, § 75.

5. The right of a railroad corporation to recover damages for

---

* HOAR, J. did not sit in this case.

the use of its road by crossing it with another public highway has been fully considered in a recent case, the principles laid down in which are applicable to the present. *Old Colony & Fall River Railroad* v. *County of Plymouth, ante*, 155.

The fact that that part of the location of the Fitchburg Railroad, over which the road of these petitioners is laid, is over a navigable stream does not affect the right of the corporation to claim the damages which may result from the acts of these petitioners. The grant by the legislature to the Fitchburg Railroad Company of a right to cross Miller's River with their road was not a new exercise of the power to regulate a navigable stream. It was a grant of an important and valuable privilege or easement, which is a part of their franchise, as much as if it had been over private property. If the acts of these petitioners in any degree impair its value, they are liable to make due compensation therefor as for property taken for a public use. Nor is there anything in the act authorizing these petitioners to construct a railroad over that of the Fitchburg Company, to lead to the inference that it was intended as an exercise of the right reserved to the legislature of altering, modifying or repealing the charter granted to the Fitchburg Railroad Company. It is the ordinary case of an authority conferred on a new corporation to take a portion of the franchise created by a previous grant, for which it was the intention of the legislature that due compensation should be made according to standing laws. *Parker* v. *Boston & Maine Railroad*, 3 Cush. 113. *Boston & Lowell Railroad* v. *Salem & Lowell Railroad*, 2 Gray, 1. *Central Bridge* v. *Lowell*, 4 Gray, 474.

The only question in this case is, whether the Fitchburg Railroad Company can maintain their petition and have any damages assessed by the jury. The question, what are proper elements of damage, will arise at the hearing before the jury.

*Writ of certiorari refused.*